UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHIVA SAGAR REDDY GADDAM <br> 3-21, Kanakamamidi <br> Moinabad, Ranga Reddy <br> Telangana, India 501504, <br><br> *Plaintiff*, <br><br> v. <br><br> ANTONY J. BLINKEN, U.S. Secretary of State, in his official capacity; c/o Executive Office, Office of the Legal Advisor, U.S. Department of State Suite 5.600, 600 19th Street NW Washington, DC 20522; <br><br> ALEJANDRO MAYORKAS, Secretary of Homeland Security, in his official capacity; c/o Office of the General Counsel, U.S. Department of Homeland Security 245 Murray Lane, SW Washington, DC 20528 <br><br> MERRICK B. GARLAND, Attorney General of the United States, in his official capacity; c/o Attorney General of the United States, U.S. Department of Justice 950 Pennsylvania Avenue, NW Washington, DC 20530 <br><br> ERIC GARCETTI, Ambassador-Designate, U.S. Embassy New Delhi, India, in his official capacity; c/o Executive Office, Office of the Legal Advisor, U.S. Department of State Suite 5.600, 600 19th Street NW Washington, DC 20522; <br><br> *Defendants*. | Case No. _____ <br><br> COMPLAINT FOR WRIT OF MANDAMUS AND OTHER INJUNCTIVE RELIEF |

1

**INTRODUCTION**

1. Plaintiff Shiva Sagar Reddy Gaddam is a citizen of India who seeks to resume his employment in the United States through an H-1B visa based on an approved I-129 petition. Plaintiff is an experienced Salesforce Project Manager who has been assigned to work on high-profile, complex in-house projects for his H-1B Petitioner/Employer, Access Global Group Inc., focused on "AGG Product Development & Upgrades" and "Internal Salesforce Systems Upgrades & Enhancements". However, Plaintiff's visa application has been severely delayed by "administrative processing," forcing a delay in his return to the U.S. to resume employment on these in-house projects for the H-1B Petitioner.

2. Plaintiff is a key resource in developing the H-1B Petitioner's in-house "AGG Product Development & Upgrades" and "Internal Salesforce Systems Upgrades & Enhancements" projects and is facing tremendous pressure from his employer to return to the United States as early as possible. Not having Plaintiff in the United States executing his duties and responsibilities as a Salesforce Project Manager on these projects is causing significant issues for the company and a significant loss of revenue.

3. Given the nature of the H-1B program and the considerable ongoing harm that is being inflicted on Plaintiff and the H-1B Petitioner Access Global Group Inc., the delay in adjudicating Plaintiff's visa application is clearly unreasonable and the U.S. Department of State may be compelled to conclude the matter under the Mandamus Act and the Administrative Procedure Act.

4. On February 07, 2022, Plaintiff had an in-person interview with a U.S. consular officer at the U.S. Embassy in New Delhi, India for his H-1B visa. After the interview, he was issued a notice stating that his visa application has been refused under section 221(g) of the U.S. Immigration and Nationality Act (INA) and it requires further administrative processing—an

undefined and opaque process implemented by Department of State for certain visa applications. Plaintiff was requested to send a list of documents via email to HLProcessing@state.gov, which he submitted on February 22, 2022. Since then, Plaintiff has followed up regularly with the U.S. Embassy in New Delhi, India (specifically on May 14, 2022; June 05, 2022; June 22, 2022; October 31, 2022; and January 31, 2023) but there has been no update on his visa application.

5. On April 18, 2022, Renee M. Burek, President of Immigration Law Associates, P.C. emailed the U.S. Consulate General in New Delhi, India emphasizing the urgency and importance of Plaintiff's visa application being adjudicated so that he can timely return to the United States to resume employment on the H-1B Petitioner's in-house projects. She also emphasized that the Plaintiff does not work at a third-party client site and works directly for the H-1B Petitioner on their in-house projects. However, there has been no response to Renee M. Burek's email and there has been no update on Plaintiff's visa application.

6. On June 15, 2022, Renee M. Burek, President of Immigration Law Associates, P.C. sent another email to the U.S. Consulate General in New Delhi, India again emphasizing the urgency the importance of Plaintiff's visa application being adjudicated so that he can timely return to the United States to resume employment on the H-1B Petitioner's in-house projects. However, there has been no response to Renee M. Burek's email and there has been no update on Plaintiff's visa application.

7. Despite the ongoing security-related administrative processing, Plaintiff was admitted to the United States on his previously approved F-1 student visa on December 24, 2018, casting significant doubt on the supposed security concerns that justify the delayed adjudication of his H-1B.

8. Plaintiff departed the United States on January 23, 2022, and was expected to resume working on the H-1B Petitioner's high-profile, complex in-house projects soon after his international trip.

9. Plaintiff has suffered injuries as a result of the delays and these injuries will continue to accrue if his visa is not adjudicated soon. His employment with the H-1B Petitioner Access Global Group Inc. is a critical source of income and he is at risk of losing his assignment on these critical in-house projects. Plaintiff is assigned to develop and manage the H-1B Petitioner's in-house projects "AGG Product Development & Upgrade" and "Internal Salesforce System Upgrades & Enhancements" and to support teams in Sales, Accounting, Delivery & Operations. Plaintiff is responsible for creating and managing project plans; monitoring and reviewing project progress and timelines; adjusting schedules and plans as needed; and identifying and resolving issues to ensure project success. If the project deadlines are not met based on the expected timelines and commitments, the H-1B Petitioner Access Global Group Inc. will be at risk of losing clients, resulting in a significant loss of revenue and possibly the loss of Plaintiff's employment altogether.

10. The U.S. Consulate has repeatedly stated that the processing times vary and it cannot offer any estimate of how long administrative processing will take, leaving Plaintiff in a constant state of stress and uncertainty. As long as Plaintiff's visa is pending, he is unable to plan for the future as he lacks even basic information like when he can expect an adjudication.

11. The U.S. Department of State has a clear and unambiguous duty to adjudicate Plaintiff's visa application and to do so within a reasonable period of time. Based on the extraordinary length of Plaintiff's administrative processing, especially in light of his possession of a valid U.S. visa and his previous admission to the U.S., the delay by the U.S. Department of State in adjudicating his current visa application is clearly unreasonable.

12. Therefore, Plaintiff seeks an order compelling the U.S. Department of State to adjudicate his visa application, allowing him to either enter the U.S. to resume his employment with the H-1B Petitioner Access Global Group Inc. on the high-profile, complex in-house projects, or to begin making alternative plans as needed.

## JURISDICTION AND VENUE

13. The Court has jurisdiction pursuant to: 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1361 (mandamus statute); 28 U.S.C. §§ 2201, 2202 (declaratory judgment); and 5 U.S.C. §§ 555(b), 701-708 (Administrative Procedure Act).

14. Venue is proper within the District of Columbia under 28 U.S.C. § 1391(e)(1)(A) because (1) this is a civil action in which Defendants are either employees or officers of the United States, acting in their official capacity, or an agency of the United States; (2) a substantial part of the events or omissions giving rise to the claim occurred in the District of Columbia because Defendants are headquartered within this district; and (3) there is no real property involved in this action.

## PARTIES

15. Plaintiff Shiva Sagar Reddy Gaddam is a citizen of India who seeks to resume his employment in the United States through an H-1B visa based on an approved I-129 petition. Plaintiff is currently in India while his H-1B visa application is pending at the U.S. Embassy in New Delhi, India.

16. Defendant Antony J. Blinken is U.S. Secretary of State and is sued in his official capacity. Defendant Blinken is primarily responsible for and has supervisory duties over the functions of the U.S. Department of State, including the processing and adjudication of nonimmigrant visas.

17. Defendant Alejandro Mayorkas is Secretary of Homeland Security and is sued in his official capacity. Defendant Mayorkas is primarily responsible for and has supervisory duties over the functions of the U.S. Department of Homeland Security, including security-related vetting of visa applications in coordination with the U.S. Department of State.

18. Defendant Merrick B. Garland is the Attorney General of the United States and is sued in his official capacity. Defendant Garland is primarily responsible for and has supervisory duties over the functions of the U.S. Department of Justice, including security-related vetting of visa applications performed by departmental agency the Federal Bureau of Investigation (FBI) in coordination with the U.S. Department of State.

19. Defendant Eric Garcetti is Ambassador-Designate at the U.S. Embassy New Delhi, India and is sued in his official capacity. He supervises the nonimmigrant visa section of the embassy, which is processing Plaintiff's application.

## STATEMENT OF FACT

Statutory and Regulatory Framework for Visa Adjudications

20. The Immigration and Nationality Act (INA) establishes U.S. immigration procedures, including departmental responsibilities. The INA assigns responsibility to consular officers for issuing immigrant and nonimmigrant visas to foreign nationals who are eligible for those visas and admissible to the United States. *See* 8 U.S.C. § 1201; 22 C.F.R. § 41.111.

21. Under the INA, consular officials are required to act on visa applications. The relevant statutory language states that for nonimmigrant visas:

> When a visa application has been properly completed and executed in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa, refuse the visa, or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa.

22 CFR § 41.121. The statutory language makes clear that although consular officials have the discretion to determine the outcome of a visa adjudication, they do not have discretion over whether or not to make an adjudication at all and are required to do so as a matter of ministerial duty as prescribed by plainly stated law. *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Service to the United States v. Kerry*, 168 F. Supp. 3d 268, 281 (D.D.C. 2016) (citing *Patel v. Reno*, 134 F. 3d 929, 932 (9th Cir. 1997)).

22. One type of nonimmigrant visa created by statute is the H-1B specialty occupation visa. 8 U.S.C. § 1101(a)(15)(H)(i)(b). The H-1B visa is intended for nonimmigrants who "work in a specialty occupation, engage in cooperative research and development projects administered by the U.S. Department of Defense, or are a fashion model of distinguished merit and ability."[1] According to the U.S. Department of Labor, "the intent of the H-1B provisions is to help employers who cannot otherwise obtain needed business skills and abilities from the U.S. workforce by authorizing the temporary employment of qualified individuals who are not otherwise authorized to work in the United States."[2]

23. To obtain H-1B classification, a company must file an I-129 petition with U.S. Citizenship and Immigration Services (USCIS) based on an approved Labor Condition Application from the U.S. Department of Labor. The company must hire the alien to work in a "specialty occupation," a position which requires a bachelor's degree or higher in a specific specialty. The alien must possess either said degree or experience equivalent to said degree. 22 C.F.R. § 41.53(a); 9 FAM 402.10-4(B).

---

[1] USCIS, "H-1B Visas for Temporary Workers," https://www.uscis.gov/working-in-the-united-states/h-1b-specialty-occupations
[2] U.S. Department of Labor, "H-1B Program," https://www.dol.gov/agencies/whd/immigration/h1b

24. The length of validity of the H-1B visa is determined by USCIS when it adjudicates the I-129 petition. A maximum of three years is allowed, but USCIS will approve the petition for as long as it determines there is concrete, non-speculative specialty occupation work available for the alien beneficiary.

25. If the alien beneficiary is already in the United States when the I-129 is approved, he or she may remain in the United States and continue working pursuant to the I-129 approval and the grant of an extension of his or her stay. However, if the alien beneficiary subsequently departs the United States and does not possess a valid visa, then he or she will need to apply for and obtain an H-1B visa in order to return to the United States to resume working pursuant to the I-129 approval. To obtain an H-1B visa, the alien beneficiary submits the visa application (Form DS-160) online and schedules a U.S. visa dropbox appointment or an interview with the U.S. embassy or consulate, the timing of which depends on the individual embassy or consulate's wait times.

26. There are generally three outcomes of the U.S. visa dropbox appointment or interview: a visa is issued, a visa is denied, or "after your visa interview, your application may require further administrative processing."[3]

Plaintiff and His Employer Have Followed Standard Procedure for a Timely Filed H-1B Petition.

27. Plaintiff, an Indian citizen, earned a Master of Science degree in Information Systems and Technology from Wilmington University in Delaware, United States of America in 2020. He also has several years of experience in the field of information technology.

28. In June 2021, the H-1B Petitioner Access Global Group Inc. filed an I-129, H-1B Cap petition with USCIS, which was approved with validity from October 01, 2021 to September 25,

---

[3] U.S. Department of State, "Temporary Worker Visas"
https://travel.state.gov/content/travel/en/us-visas/employment/temporary-worker-visas.html

2024. Plaintiff had been assigned to work as a Salesforce Project Manager on the H-1B Petitioner, Access Global Group's (AGG) Product Development & Upgrades and Internal Salesforce System Upgrades in-house projects. The Plaintiff was responsible for creating and managing project plans; monitoring and reviewing project progress and timelines; adjusting schedules and plans as needed; and identifying and resolving issues to ensure project success. He was also responsible for managing day-to-day execution of project implementations, and assisting with the planning, tracking, documentation and status updates for the project, etc.

29. On January 23, 2022, Plaintiff departed the United States on what was supposed to be a temporary trip to India, with the expectation from his employer, the H-1B Petitioner Access Global Group Inc., that Plaintiff would resume working on their high-profile, complex in-house projects soon after his trip.

30. Since Plaintiff did not have a valid H-1B visa, he needed to apply for and obtain an H-1B visa. He submitted his DS-160 nonimmigrant visa application and scheduled an in-person interview with a U.S. consular officer at the Embassy of the United State of America in New Delhi, India on February 07, 2022. Plaintiff attended the in-person interview at the scheduled time. Upon completion of the interview, the consular officer failed to issue the visa (i.e., informed of immediate or closely pending approval). Instead, the U.S. Embassy issued a notice to Plaintiff stating that his visa application has been refused under section 221(g) of the U.S. Immigration and Nationality Act (INA) and it requires further administrative processing. Plaintiff was requested to send a list of documents via email to HLProcessing@state.gov, which he submitted on February 22, 2022. Since then, Plaintiff has followed up regularly with the U.S. Embassy in New Delhi, India (specifically on May 14, 2022; June 05, 2022; June 22, 2022; October 31, 2022; and January 31, 2023) but there has not been no update on his visa application.

31. On October 14, 2022, Plaintiff received an email from support@ustraveldocs.com asking him to visit the nearest USCIS office for further information in his case. The Plaintiff, on visiting the U.S. consulate office in Hyderabad, India, was not allowed to enter the U.S. consulate and was asked to contact the NIV Unit. After multiple follow-ups, calls and emails, the Plaintiff received an email from the U.S. consulate stating "*Your case is still under administrative processing, we will contact you once its complete. Please ignore the earlier response regarding USCIS.*"

32. Eventually, Plaintiff hired legal counsel to assist him with securing his visa. On April 18, 2022, Renee M. Burek, President of Immigration Law Associates, P.C. emailed the U.S. Consulate General in New Delhi, India emphasizing the urgency and importance of Plaintiff's visa application being adjudicated so that he can timely return to the United States to resume employment on the H-1B Petitioner's in-house projects. She also emphasized on the point that the Plaintiff does not work at a third-party client site and works directly for the H-1B Petitioner on their in-house projects. However, there has been no response to Renee M. Burek's email and there has been no update on Plaintiff's visa application.

33. On June 15, 2022, Renee M. Burek, President of Immigration Law Associates, P.C. sent another email to the U.S. Consulate General in New Delhi, India again emphasizing the urgency the importance of Plaintiff's visa application being adjudicated so that he can timely return to the United States to resume employment on the H-1B Petitioner's in-house projects. However, there has been no response to Renee M. Burek's email and there has been no update on Plaintiff's visa application.

34. On February 07, 2023, the Office of United States Senator Ted Cruz submitted an inquiry to the Department of State about the status of Plaintiff's pending visa application. There has been no response from the U.S. Embassy.

<u>The U.S. Department of State Has Unreasonably Withheld a Decision on Plaintiff's Visa Application</u>

35. Despite the ongoing security-related administrative processing, Plaintiff was admitted to the United States on his previously approved F-1 student visa on December 24, 2018, casting significant doubt on the supposed security concerns that justify the delayed adjudication of his H-1B.

36. Plaintiff departed the United States on January 23, 2022 and was expected to resume working on the high-profile, complex in-house projects for the H-1B Petitioner Access Global Group soon after his international trip. He is facing tremendous pressure from his employer to return to the United States as early as possible. Not having Plaintiff in the United States executing his duties and responsibilities as a Salesforce Project Manager on these in-house projects is causing significant issues for the company and a significant loss of revenue. Plaintiff is required to return to the United States as early as possible to meet the deadlines of his employer and avoid the delay in delivering its products to the company's clients.

37. The U.S. Consulate has repeatedly stated that the processing time varies and it cannot offer any estimate of how long administrative processing will take, leaving Plaintiff in a constant state of stress and uncertainty. As long as his visa is pending, he is unable to plan for the future as he lacks even basic information like when he can expect an adjudication.

38. Given the nature and objectives of the H-1B program, the process for acquiring an H-1B visa, and the time constraints imposed by I-129 validity dates, the delay in adjudicating Plaintiff's visa application is clearly unreasonable.

Plaintiff Faces Significant Hardship Due to the U.S. Department of State's Inaction

39. Plaintiff has already suffered significant hardships as a result of the U.S. Department of State's delays and these hardships will continue and increase as long as the delay in adjudicating Plaintiff's visa continues.

40. Plaintiff's employment with the H-1B Petitioner, Access Global Group is a critical source of income and he is at risk of losing his assignment on these critical projects. The long delay in adjudicating Plaintiff's visa application casts his assignment on these projects into doubt—the H-1B Petitioner does not know how long it can afford to wait for Plaintiff to return to the U.S. to resume working on their critical in-house projects—and Plaintiff faces the real possibility of losing his employment altogether. Losing this assignment and his employment would be a huge professional setback.

41. Furthermore, Plaintiff is experiencing significant financial burdens in paying his credit card bills and other monthly expenses. His marriage was even cancelled because of the delay by the U.S. Consulate in adjudicating his visa application because his fiancée's parents were not comfortable with his case being stuck in India for more than a year.

The "TRAC Factors" Support Plaintiff's Claim of Unreasonable Agency Delay

42. In determining whether or not an agency delay is unreasonable for the purposes of APA/Mandamus suits, numerous courts have adopted the so-called "TRAC Factors" outlined in *Telecomms, Research & Action Ctr. v. F.C.C. ("TRAC")*, 750 F. 2d 70, 80 (D.C. Cir. 1984). *See,*

for example, <u>Brower v. Evans</u>, *257 F. 3d 1058, 1068* (9th Cir. 2001); <u>Kashkool v. Chertoff</u>, 553 F. Supp. 2d 1131, 1147 (D. Ariz. 2008).

43. Among the TRAC factors are considerations of the hardships imposed by the delayed agency action, including the guidance that delays are less tolerable "when human health and welfare are at stake" rather than just economic interest. *TRAC*. Additionally, the reasonableness of the delay must be judged in light of the government's justification for such delays. *Kashkool* (citing *Fraga v. Smith*, 607 F. Supp. 517, 522 (D.Or.1985)).

44. In this case, more than just Plaintiff's economic interests are at stake. Plaintiff suffers from the uncertainty and instability that he has been plunged into for more than a year now. As long as his application hangs in the balance, Plaintiff is effectively frozen in place, unable to make any decisions regarding his future and not knowing if he will be able to continue pursuing the career he desires in the United States.

45. There are further human costs beyond Plaintiff as a result of the delay. As long as Plaintiff is unable to obtain his H-1B visa, the H-1B Petitioner Access Global Group Inc. loses a highly trained, highly educated information technology expert and foregoes the contributions he would be able to continue making on its in-house projects" AGG's Product Development & Upgrades" and "Internal Salesforce System Upgrades & Enhancements". Plaintiff's employer, the H-1B Petitioner Access Global Group Inc., is not only in fear of losing Plaintiff's services on this project, but also its various clients to whom the H-1B Petitioner plans to deliver its customized products on an ongoing basis. The H-1B Petitioner has an ongoing relationship with various clients which is extremely valuable to the company and because of these delays it is at risk of losing these clients. Losing these clients would cause a significant loss of revenue to it.

46. The implied government justification for this delay is that Plaintiff's application must undergo administrative processing due to security-related concerns that warrant further vetting. However, Plaintiff has been able to obtain a nonimmigrant visa in the past (F-1 student visa) and was admitted to the U.S. on December 24, 2018. That Plaintiff was admitted to the U.S. in F-1 student status is simply incongruous with the government's supposed need to engage in lengthy administrative processing to determine if he is a security threat.

47. Given Plaintiff's previous vetting and the implicit concession by the government upon his previous entry that his entry does not pose a threat to national security, it is entirely unclear what government objective is served by the extraordinary delay in adjudicating the visa application. Therefore, it is clear that the balance of the TRAC factors is heavily in Plaintiff's favor, as the ongoing delay in adjudication imposes numerous costs which are not clearly justified by any government objective.

Plaintiff Has Exhausted All Other Potential Remedies

48. Plaintiff has been left with no other recourse due to the intentional opaqueness of administrative processing. The U.S. Consulate has clearly expressed that it cannot provide a timeline for completion of processing and that the process cannot be expedited. The U.S. Consulate has not offered any alternative venues to register concerns.

49. The U.S. Department of State is similarly opaque, providing only limited information about the nature of administrative processing. The only indication of how an individual may follow up or inform the U.S. Department of State of urgent issues is a brief statement on a webpage for administrative processing that:

> Except in cases of emergency travel (i.e. serious illnesses, injuries, or deaths in your immediate family), before making inquiries about status of administrative

processing, applicants should wait at least 180 days from the date of interview or submission of supplemental documents, whichever is later.[4]

There is no indication of where this inquiry should be lodged, leaving an applicant to assume that the proper recipient is the U.S. Embassy adjudicating the visa.

50. Plaintiff has repeatedly followed up with the U.S. Embassy, the only obvious (albeit unrecognized by the U.S. Department of State) avenue for administrative remedy. However, Plaintiff's visa application is still pending.

51. It is clear that Plaintiff has exhausted all possible options for administrative remedy. Plaintiff has contacted the only entity he knows is responsible for adjudicating the visa. The impenetrable information barriers surrounding "administrative processing" leaves Plaintiff with no other way to ensure his visa is adjudicated in a timely manner.

## CAUSES OF ACTION

**Count I: Request for Relief Under Mandamus Act**

52. Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

53. Mandamus is available to compel a federal official or agency to perform a duty if: (1) the plaintiff has a clear right to the relief requested; (2) defendant has a clear, non-discretionary duty to act; and (3) there is no other adequate remedy available. *See* 28 U.S.C. § 1361; *Iddir v. INS*, 301 F.3d 492, 499 (7th Cir. 2002).

54. Plaintiff is eligible for and has fulfilled all requirements for the H-1B nonimmigrant visa. Plaintiff has submitted all necessary information and evidence supporting his application.

---

[4] https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html

55. Defendant U.S. Department of State has a clear, ministerial, and nondiscretionary duty to adjudicate the visa application as it has been properly completed and executed. 8 U.S.C. 1153(e)(1), 1154; 22 C.F.R. 42.81(a). Consular officers at overseas posts are obligated by the agency's regulations to either issue or refuse visa applications by aliens seeking H-1B nonimmigrant visas once an application has been executed. 9 FAM 403.7-3. Plaintiff therefore has a clear and certain right to have his visa application adjudicated.

56. Plaintiff has exhausted all possible remedies, making the issuance of a writ of mandamus the only available recourse.

57. Plaintiff has a particularized and concrete injury because of the delay in his gainful employment and the continued uncertainty over his future.

**Count II: Request for Relief Under APA**

58. Section 706(1) of Title 5 provides that a reviewing court shall compel agency action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1).

59. "With due regard for the convenience and necessity of the parties or their representatives and within a *reasonable* time, each agency shall proceed to conclude a matter presented to it." *Emphasis added*. 5 U.S.C. § 555(b).

60. Defendant U.S. Department of State has promulgated regulations setting forth the process for adjudicating nonimmigrant visa applications for persons seeking to engage in specialty occupation work in the U.S.

61. Plaintiff has satisfied those regulations in applying for his H-1B visa.

62. The harm to Plaintiff cannot be terminated by Defendant's denying his visa to moot out this case, as it is endlessly repeatable. Plaintiff intends to continue reapplying for his visa until such time it is issued or an irrefutable basis of inadmissibility is provided.

63. The government has unlawfully withheld adjudication of Plaintiff's visa application despite accepting the application and the statutorily mandated fees, and without any good faith explanation for the extreme delay.

64. A reviewing court shall compel agency action that is unlawfully withheld or unreasonably delayed. 5 U.S.C. §§ 555(b), 706(1).

65. The government's failure to adjudicate Plaintiff's application constitutes final agency action reviewable by this Court under 5 U.S.C. § 704 because it is a "failure to act," 5 U.S.C. § 551(13). The current "Administrative Processing" under 221(g) is a sham refusal to satisfy statutory concerns.

66. A final action occurs when the "agency's decision-making process is at an end." *Fund for Animals v. Williams*, 391 F. Supp. 2d 132, 137 (D.D.C. 2005) (dicta). However, a mere indication that one decision-making process has concluded "does not constitute a final agency action" when there remain "subsequent discretionary actions requiring separate and independent decision-making that are divorced from the prior decision." *Id.*; *citing Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 893 (1990) (quotations omitted); *see also Fund for Animals v. Bureau of Land Mgmt.*, 357 F.Supp. 2d 225, 229 (D.D.C. 2004) (holding that when implementation of an action requires further agency decision making, the announcement of a decision is not a final action). Thus, a visa decision that requires additional processing and review is not a final decision and does not make the case moot under consular non-reviewability.

67. Defendants' inaction has caused particularized and concrete injury to Plaintiff with further impending injury if inaction continues.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court grant the following relief:

17

(1) Issue a writ of mandamus ordering Defendants to adjudicate Plaintiff's nonimmigrant visa application within 30 days;

(2) Declare that Defendants' delay in adjudicating Plaintiff's visa application is unreasonable and violates the APA, and that Plaintiff is entitled to prompt adjudication of his visa application within 30 days;

(3) Award reasonable attorney's fees and costs as provided under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(4) Grant Plaintiffs such further relief as the Court deems just and proper.

DATED this 17th day of April 2023:

                                               /s/ Mika B. Kozar, Esq.
                                               Mika B. Kozar, Esq. (Bar ID: NJ028)
                                               Law Office of Thomas V. Allen, PLLC
                                               P.O. Box 517
                                               Monmouth Junction, NJ 08852
                                               Tel: (732) 832-7978
                                               Fax: (609) 288-7733
                                               mika@tvalawyers.com
                                               Counsel for Plaintiff

Index of Exhibits

**EXHIBIT A**   I-129, H-1B Approval Notice for Plaintiff, dated July 26, 2021

**EXHIBIT B**   Copy of first 221(g) Notice issued to Plaintiff, stating visa application was refused

**EXHIBIT C**   Copy of second 221(g) Notice issued to Plaintiff, requesting him to submit additional documents in order to continue processing of his visa application

**EXHIBIT D**   Emails from U.S. Embassy in New Delhi, India to Plaintiff on February 10, 2022 and March 09, 2022, requesting him to submit additional documents in order to continue processing of his visa application

**EXHIBIT E**   Email sent by Plaintiff to the U.S. Embassy in New Delhi, India on February 22, 2022, confirming that he has submitted all the documents requested by the U.S. Embassy in order to continue processing of his visa application

**EXHIBIT F**   Email correspondence between Plaintiff and the U.S. Embassy in New Delhi, India between May 14, 2022 and January 31, 2023

**EXHIBIT G**   Email from the U.S. Embassy in New Delhi, India to Plaintiff on October, 14, 2022 advising him to contact the nearest USCIS office for further information regarding his case

**EXHIBIT H**   Emails sent by Renee M. Burek, President of Immigration Law Associates, P.C. to the U.S. Embassy in New Delhi, India on April 18, 2022 and June 15, 2022.

**EXHIBIT I:**   Email correspondence between Plaintiff and the Office of United States Senator Ted Cruz between February 02, 2023 and February 07, 2023, regarding Plaintiff's pending visa application

**EXHIBIT J**   Copy of Plaintiff's passport biographic page, F-1 visa stamp, Form I-94 and Form I-94 Travel History